## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

**CHARLES SCOTT ROGERS**

      Plaintiff,

v.

**DELTA AIR LINES, INC.**

      Defendant.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff, Charles Scott Rogers ("Mr. Rogers"), by and through his attorneys, Christine E. Breen and Robert J. Truhlar of Truhlar and Truhlar, L.L.P., hereby files his Complaint against Defendant Delta Air Lines, Inc., hereinafter referred to as "Delta" or "Defendant," and in support thereof states as follows:

### I.      PRELIMINARY STATEMENT

1) As a member of a protected class under state and federal anti-discrimination laws, Mr. Rogers suffered discrimination and adverse employment actions, including retaliation, by Delta, Mr. Rogers' employer.

2) Mr. Rogers brings this action for damages as a result of Delta's discrimination against him based on his disability, failure to accommodate his disability, and his age, and for retaliation in response to him participating in protected activity.

3) Delta acted in retaliation against Mr. Rogers for his reporting Delta's discriminatory actions against him due to Mr. Rogers' protected classes.

4)     Delta adversely altered the terms and conditions of Mr. Rogers' employment and wrongfully suspended and terminated Mr. Rogers, in violation of state and federal law.

5)     Mr. Rogers brings claims against Delta pursuant to the Americans with Disabilities Act ("the ADA") *42 U.S.C. § 12112, et seq*, the Age Discrimination in Employment Act ("ADEA") *29 U.S.C. § 621-634*, and Breach of Contract.

## II.    PARTIES

6)     At all relevant times during his employment with Delta, Mr. Rogers was an individual who resided and domiciled in Colorado. At all times relevant to this Complaint, Mr. Rogers is and was a member of a protected class of individuals recognized under the ADA and the ADEA.

7)     Defendant Delta is a foreign corporation doing business in Colorado. Delta's principle address is 1030 Delta Boulevard, Dept 982, Atlanta, GA 30354 and its Registered Agent in Colorado is located at 1900 W. Littleton Boulevard, Littleton, CO 80120.

8)     Delta is an international air carrier.

9)     Delta operates within the State of Colorado and employs more than 15 employees.

## III.    JURISDICTION AND VENUE

10)     This Court has original jurisdiction over Mr. Rogers' federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), (a)(4). This Court also has jurisdiction pursuant to 28 U.S.C. § 1367 for supplemental jurisdiction over Mr. Rogers' state claims.

11)     Venue is proper under 28 U.S.C. § 1391 because the conduct complained of herein occurred in the State of Colorado.

## IV.   <u>ADMINISTRATIVE REMEDIES HAVE BEEN EXHAUSTED</u>

12)     Mr. Rogers incorporates by reference paragraphs 1 through 11 of this Complaint as though fully and separately stated herein.

13)     Mr. Rogers dually filed his Charge of Discrimination with the Colorado Civil Rights Division ("CCRD") (Charge No. FE2019919568) and the Equal Employment Opportunity Commission ("EEOC") (Charge No. 32A-2018-00775) on September 14, 2018.

14)     Mr. Rogers amended his original September 14, 2018 Charge and dually filed his Amended Charge of Discrimination with the Colorado Civil Rights Division ("CCRD") and the Equal Employment Opportunity Commission ("EEOC") on February 6, 2020.

15)      Mr. Rogers asserted claims of discrimination based on Age and Disability, Failure to Accommodate his Disability, and Retaliation.

16)     The CCRD issued its Determination finding probable cause for discrimination on October 24, 2019.

17)     On February 4, 2020, the EEOC informed Mr. Rogers that the EEOC had asserted jurisdiction in his matter and his Charge was being transferred to the Denver Field Office of the EEOC from the CCRD.

18)     The EEOC then investigated Mr. Rogers' Charge of Discrimination and Amended Charge of Discrimination independent of the CCRD's investigation.

19)     The EEOC issued its Determination on March 30, 2020 finding "reasonable cause to believe that [Mr. Rogers] was subjected to unequal terms and conditions of employment based on his age and disability….[The EEOC] further conclude[d] that there is reasonable cause to

believe [Mr. Rogers] was denied a reasonable accommodation, suspended, and discharged based on his disability and in retaliation for requesting a reasonable accommodation."

20)     The EEOC signed a Notice of Right to Sue – Conciliation Failure on August 26, 2020. It was received days later by Mr. Rogers.

21)     Mr. Rogers files this matter timely within the 90-day jurisdictional time limit.

## V.     GENERAL ALLEGATIONS

22)     Mr. Rogers incorporates by reference paragraphs 1 through 21of this Complaint as though full and separately stated herein.

23)     Mr. Rogers was born on July 13, 1963.

24)     Mr. Rogers is 57 years old.

25)     Mr. Rogers suffers from a qualifying disability under the ADA: Alcoholism.

### *Mr. Rogers' was Qualified for His Job*

26)     From 1987 through 1988, prior to working for Delta, Mr. Rogers attended school at Cheyenne Aerotech.

27)     While attending school at Cheyenne Aerotech, Mr. Rogers put in 1,940 hours and earned his Airframe and Powerplant License.

28)     Mr. Rogers still holds his Airframe and Powerplant License.

29)     Mr. Rogers maintained his Airframe and Powerplant License at all times while working for Delta.

30)     On June 27, 1988, Delta hired Mr. Rogers as a Junior Mechanic at the Hartsfield Atlanta International Airport.

31)     Mr. Rogers worked as a Junior Mechanic for six months at Delta.

32)     After working as a Junior Mechanic at Delta for six months, Mr. Rogers was promoted to Aviation Maintenance Technician.

33)     Mr. Rogers worked for Delta as a mechanic for over twenty-nine (29) years.

34)     Mr. Rogers was in his thirtieth (30th) year working for Delta and would have been with Delta a full thirty (30) years in June of 2018.

35)     Mr. Rogers received satisfactory performance evaluations throughout his career with Delta.

36)     Mr. Rogers was regularly praised for his work and positive attitude throughout his employment with Delta.

37)     Mr. Rogers was praised in his 2016 review as having consistently good work output and that when Mr. Rogers completed a task, his supervisor, Bruce Pyle ("Mr. Pyle"), knew it was done right the first time.

38)     Mr. Rogers had not received any discipline from Delta nor was he rated for poor performance during his near thirty (30) year career with Delta.

*Driving or Operating a Motor Vehicle was Not an Essential Function of Mr. Rogers' Job*

39)     Mr. Rogers' essential job functions as an Aviation Maintenance Technician consisted of inspecting, maintaining, and repairing aircrafts.

40)     Driving was not listed as job function of the Aviation Maintenance Technician position.

41)     Certain positions at Delta, such as a Supply Attendant, explicitly state operation of ground equipment or operation of company vehicles as an essential function of the position.

42)     The job description for an Aviation Maintenance Technician in the TechOps Division does not list operation of ground equipment or operation of company vehicles as being an essential function of that position.

43)     Aviation Maintenance Technicians operate in teams of at least two employees.

44)     Mr. Rogers regularly worked with a partner on assignments.

45)     Driving was never an essential function of Mr. Rogers' job.

46)     Mr. Rogers regularly walked to the various airplanes that he was assigned to work on, as all of the airplanes were within short walking distance.

47)     Mr. Rogers did not operate a motorized vehicle or motorized cart to get to an assignment for at least a year prior to being wrongfully terminated from Delta.

48)     Mr. Rogers valued and took great pride in his job and the work he did for Delta.

### *Mr. Rogers Suffers from a Disability: Alcoholism*

49)     During the later years of his employment with Delta, Mr. Rogers suffered from alcoholism.

50)     Mr. Rogers never consumed alcohol while on the job.

51)     Mr. Rogers' alcoholism did not have an effect on his ability to perform the essential functions of his job and did not affect his work performance.

52)     Mr. Rogers' alcoholism did not affect his ability to maintain his Airframe and Powerplant License.

53)     Mr. Rogers' alcoholism did substantially limit his cognitive thought process, his interactions with others, his ability to sleep and eat, as well as other major life activities.

54) Mr. Rogers made his disability known to his supervisors, including Mr. Pyle, and other management officials within Delta.

### *Mr. Rogers Receives a DUI Due to his Alcoholism*

55) On October 21, 2017, Mr. Rogers' driving privileges were temporarily suspended due to Mr. Rogers receiving a DUI ("the incident") during non-work hours and away from work.

56) The incident was directly attributable to Mr. Rogers' disability.

57) The incident was non-work related and did not impact Mr. Rogers' performance of his job duties.

58) Following the incident, Mr. Rogers immediately contacted his team leader, Michael Coon ("Mr. Coon"), and Mr. Pyle and informed them of the incident.

59) Mr. Rogers followed company policy in reporting the incident.

### *Delta Assures Mr. Rogers His Incident Would Not Affect His Job with Delta*

60) When Mr. Rogers contacted Mr. Pyle and Mr. Coon immediately following the incident, Mr. Rogers informed them that his license had been revoked and would likely be restricted after his hearing before the Department of Motor Vehicles ("DMV").

61) In response to Mr. Rogers informing Mr. Pyle that his driver's license had been revoked and would likely be restricted, Mr. Pyle expressly informed Mr. Rogers "you won't lose your job."

62) At no time did Mr. Pyle or Mr. Coon tell Mr. Rogers that a suspended, revoked, or restricted license would affect Mr. Rogers' employment with Delta.

63)     Mr. Pyle knew Mr. Rogers' license had been suspended when he assured Mr. Rogers that he would not lose his job.

64)     After the incident, Mr. Pyle informed Mr. Rogers of Delta's Employee Assistance Program ("EAP") as being available to Mr. Rogers to help him cope with his alcoholism.

65)     Mr. Rogers contacted Delta's EAP in January 2018 in order to access EAP services for his alcoholism.

66)     Delta was aware of Mr. Rogers' disability.

67)     Mr. Rogers continued working in his position as an Aviation Maintenance Technician with TechOps until January 11, 2018, when he went on leave pursuant to the Family and Medical Leave Act ("FMLA").

### *Mr. Rogers Goes on Leave under the Family and Medical Leave Act*

68)     On January 11, 2018, Mr. Rogers started his approved leave pursuant to the FMLA.

69)     Between October 21, 2017 when Mr. Rogers had his incident and January 11, 2018 when Mr. Rogers went on FMLA leave, Mr. Pyle nor Mr. Coon did not once indicate that the temporary loss of Mr. Rogers' driving privileges or any restrictions on his ability to drive would adversely affect Mr. Rogers' job.

70)     Operation of ground support equipment and operation of a company vehicle were never necessary for Mr. Rogers to perform the essential functions of his job.

71)     Mr. Rogers did not operate, nor did he need to operate, any ground support equipment or company vehicles between October 21, 2017 and January 11, 2018 in order to perform his essential job functions.

72)     In January 2018, Mr. Rogers requested leave under the FMLA for the specific purpose of receiving treatment for his disability.

73)     Mr. Rogers was accepted into a rehabilitation treatment facility to receive help for his alcoholism.

74)     Mr. Rogers was on FMLA leave from January 11, 2018 through February 27, 2018.

75)     Mr. Rogers was scheduled to return to work on February 28, 2018.

### *Mr. Rogers Seeks a Reasonable Accommodation for His Alcoholism*

76)     On February 27, 2018, Mr. Rogers met with Mr. Pyle to discuss his Mr. Roger's return to work from FMLA leave.

77)     Mr. Rogers and Mr. Pyle, during the February 27, 2018 meeting, discussed the Ignition Interlock Device ("IID") restriction on Mr. Rogers' license, and that Mr. Rogers had already installed an IID device on his personal vehicle.

78)     Mr. Pyle informed Mr. Rogers that Delta would not install an interlock device on its company vehicles.

79)     Delta did not need to install an interlock device on any of its vehicles in order for Mr. Rogers to perform the essential functions of his job.

80)     Mr. Rogers regularly walked to the various airplanes that he was assigned to work on, as all of the airplanes were within short walking distance.

81)     Mr. Rogers had not operated a motorized vehicle or motorized cart to get to a job assignment for at least a year prior October 2017.

82)     On February 27, 2018, Mr. Rogers asked for a reasonable accommodation to accommodate his disability.

83)     On February 27, 2018, Mr. Rogers specifically requested, as his reasonable accommodation, that he be allowed to continue in his position as an Aviation Maintenance Technician and not drive, or that he be reassigned to a different position.

84)     On February 27, 2018, Mr. Rogers also expressed to Mr. Pyle his willingness to relocate to another airport.

85)     Mr. Rogers' request to simply continue working and not drive was reasonable as this was how he was already, and had been for an extended period of time, performing his essential job functions.

86)     On February 27, 2018, in response to Mr. Rogers' request for a reasonable accommodation, Mr. Pyle simply stated to Mr. Rogers that "no accommodation was possible."

87)     At the conclusion of the meeting on February 27, 2018, Mr. Pyle suspended Mr. Rogers for sixty days without pay effective February 27, 2018.

### *Delta Fails to Engage in the Interactive Process*

88)     Mr. Pyle denied Mr. Rogers any reasonable accommodation.

89)     Mr. Pyle shut down any discussion of a reasonable accommodation.

90)     In response to Mr. Rogers' seeking a reasonable accommodation for his disability, Mr. Pyle suspended him.

91)     Mr. Pyle never consulted with Human Resources regarding Mr. Rogers' request for a reasonable accommodation for his disability.

92)     Mr. Pyle never engaged in an interactive dialogue with Mr. Rogers to determine how Delta could reasonably accommodate his disability.

93)   No one at Delta ever engaged in an interactive dialogue with Mr. Rogers to determine how Delta could reasonably accommodate his disability.

94)   Delta failed to engage in the interactive process with Mr. Rogers.

95)   Delta failed to accommodate Mr. Rogers' disability.

*Delta failed to follow its own policies governing accommodating employees' disabilities*

96)   Delta has its own policy and process regarding reasonable accommodations for Delta employees called the Job Accommodation Program.

97)   Delta's policy for when an employee requests a reasonable accommodation requires that employee's manager to direct the employee to contact Delta's Accommodations department.

98)   Delta's Accommodations department works closely with the employee needing an accommodation and the employee's doctor to obtain the necessary medical documents needed to certify the employee's medical condition, including the employee's capabilities and restrictions.

99)   As part of Delta's Job Accommodation Program, the Accommodations department begins an interactive dialogue between the employee, Delta's Accommodation Specialist, and Delta Leadership in hopes to reasonably accommodate the employee.

100)   The Job Accommodation Program may also be available to help a Delta employee who is no longer able to perform his or her own job to identify another vacant and available position within Delta for which the employee is qualified and able to perform within the employee's work restrictions, with or without a reasonable accommodation.

101)    Participation in the Job Accommodation Program does not mean that Delta considers the employee to be disabled.

102)    Delta's Job Accommodation Program is available to all employees with verified medical impairments, regardless of disability.

103)    Mr. Rogers' alcoholism is a verified medical impairment.

104)    Mr. Rogers' alcoholism entitled him to participation in the Job Accommodation Program.

105)    Once Mr. Rogers informed Mr. Pyle that he needed a reasonable accommodation for his alcoholism, Mr. Pyle was obligated under Delta's Job Accommodation Program to direct Mr. Rogers to Delta's Accommodations department so that Mr. Rogers could then engage in an interactive dialogue in order to obtain a reasonable accommodation.

106)    Mr. Pyle did not direct Mr. Rogers to Delta's Accommodations department.

107)    Mr. Pyle did not inform Mr. Rogers in any way about Delta's Job Accommodation Program or any rights Mr. Rogers had under the Job Accommodation Program.

108)    Mr. Pyle suspended Mr. Rogers without pay and recommended his termination three days later rather than follow Delta's own policy and direct Mr. Rogers to Delta's Accommodation Program.

109)    Delta failed to follow its own accommodations policy when Mr. Pyle failed to direct Mr. Rogers to the Job Accommodations Program.

110)    Delta instead suspended and terminated Mr. Rogers because of his disability, because he requested an accommodation, and because of his age.

*Delta Suspends Mr. Rogers from Employment Without Pay*

111) On March 2, 2018, three days after Mr. Rogers sought a reasonable accommodation for his alcoholism, Mr. Pyle, rather than engage in the interactive process, submitted a Recommendation of Termination to Robert Henrie ("Mr. Henrie"), the Western Regional Manager for TechOps.

112) The Recommendation of Termination Mr. Pyle submitted to Mr. Henrie recommended that Mr. Rogers be terminated from employment with Delta.

113) Rather than engage in the interactive dialogue with Mr. Rogers to determine a reasonable accommodation that would allow Mr. Rogers to continue working for Delta, Mr. Pyle, acting on behalf of Delta, chose to recommend Mr. Rogers' employment terminate three days after he made the accommodation request.

114) Mr. Rogers received written notice of the suspension, which was written and signed by Mr. Pyle on March 9, 2018, by letter dated March 5, 2018.

115) Delta suspended Mr. Rogers for a period of 60 days without pay.

116) Delta informed Mr. Rogers that he could not return to work until he had an unrestricted driver's license.

117) Delta informed Mr. Rogers that if he could not get an unrestricted license within his 60-day unpaid suspension, he would be terminated.

118) Delta knew when it suspended Mr. Rogers that Mr. Rogers' license was restricted for a period of at least four months.

119) Possessing an unrestricted driver's license was not a term or condition of Mr. Rogers' employment.

120)    Between October 27, 2017 and January 11, 2018, Mr. Rogers' driver's license was revoked for 30 days.

121)    Delta continued to have Mr. Rogers to work while his driver's license was revoked between October 27, 2017 and January 11, 2018.

122)    No other reason exists, other than discriminatory and retaliatory animus, for Mr. Pyle to suspended Mr. Rogers.

123)    No other reason exists, other than discriminatory and retaliatory animus, for Delta to terminate Mr. Rogers.

### *Delta Could Have Accommodated Mr. Rogers at No Cost and With Little to No Effort*

124)    In the notice of Mr. Rogers' suspension, Mr. Pyle stated that the DMV requirement that any vehicle I operated be equipped with an interlock system meant that Mr. Rogers "[did] not meet the criteria required to operate ground support or motor vehicles and thus cannot perform the essential duties of his job."

125)    Mr. Pyle's statement that "because any vehicle Mr. Rogers operated required an IID, Mr. Rogers could not perform the essential duties of his job" is false.

126)    Driving was never an essential function of Mr. Rogers' job.

127)    Whether Mr. Rogers could or could not drive never influenced his ability to perform the essential functions of his job, as he regularly opted to walk instead of drive.

128)    In the very rare occurrence driving occurred onsite, Mr. Rogers' partner could have driven instead of Mr. Rogers.

129)    There was never any reason Mr. Rogers needed to drive while at work.

130)    It was normal practice that in the rare event Mr. Rogers ever needed to travel to an offsite location, he would use his own personal vehicle.

131)    Mr. Rogers' personal vehicle had an IID installed.

132)    As part of Mr. Rogers' continued employment, he could simply continue to use his own personal vehicle if there was ever a need to travel to an offsite location.

133)    Delta was able to reasonably, at no cost to Delta, accommodate Mr. Rogers' disability.

134)    Delta chose not to accommodate Mr. Rogers' disability.

*Delta Refuses to Engage in the Interactive Process Again After Mr. Rogers Makes a Second Request for a Reasonable Accommodation*

135)    On April 26, 2018, while Mr. Rogers was on 60-days unpaid leave, Mr. Rogers made a second request for an accommodation to Mr. Pyle in writing via email and sent a copy of the request to Jennifer Shay ("Ms. Shay") in Delta's Human Resources Department.

136)    In Mr. Rogers' second request for an accommodation, he specifically requested to be reassigned to a position that did not involve any driving, even on the rare occasion.

137)    In Mr. Rogers' second request for an accommodation, Mr. Rogers complained of discrimination.

138)    Delta ignored Mr. Rogers' second request for an accommodation.

139)    Mr. Pyle never responded to Mr. Rogers' second request for an accommodation.

140)    Mr. Pyle never acknowledged Mr. Rogers' second request for an accommodation.

141)    Ms. Shay never responded to Mr. Rogers' second request for an accommodation.

142)     Ms. Shay never acknowledged Mr. Rogers' second request for an accommodation.

143)     Delta had an obligation under the law to engage in an interactive dialogue with Mr. Rogers each time he made his reasonable accommodation request.

144)     Delta had an obligation under its own policies to engage in an interactive dialogue with Mr. Rogers each time he made his reasonable accommodation request.

145)     Delta failed to engage in the interactive process both times Mr. Rogers made a request for a reasonable accommodation.

### *Delta Terminates Mr. Rogers*

146)     Delta started the process of terminating Mr. Rogers on March 2, 2018, three days after Mr. Rogers requested a reasonable accommodation for his disability.

147)     On April 26, 2018, the General Manager of Human Resources executed a Recommendation of Termination.

148)     The Recommendation of Termination, executed on April 26, 2018, stated "Mr. Rogers should be asked to resign. If he refuses, his employment should be terminated."

149)     Delta executed the Recommendation of Termination to terminate Mr. Rogers the same day Mr. Rogers made his second request for an accommodation.

150)     Mr. Rogers did not know that Delta executed the Recommendation of Termination the same day he made his second request for an accommodation.

151)     Rather than engage in the interactive dialogue with Mr. Rogers to determine a reasonable accommodation that would allow Mr. Rogers to continue working for Delta, Delta immediately recommended Mr. Rogers' employment terminate after he made his second request for a reasonable accommodation.

152)    During Mr. Rogers' unpaid suspension, on May 10, 2018, Mr. Henrie emailed Mr. Rogers pressuring him to either retire or resign.

153)    Mr. Henrie was aware of Mr. Rogers' requests for a reasonable accommodation.

154)    Mr. Henrie never addressed any of Mr. Rogers' reasonable accommodation requests or attempted to engage in the interactive process with Mr. Rogers.

155)    On May 11, 2018, Mr. Rogers informed Mr. Henrie that he would not retire or resign.

156)    In response to Mr. Rogers' refusal to retire or resign, Mr. Henrie informed Mr. Rogers that his employment with Delta would be terminated.

157)    Delta terminated Mr. Rogers on May 11, 2018.

158)    Delta terminated Mr. Rogers before the 60-day unpaid suspension had ended.

159)    On June 4, 2018, Delta sent Mr. Rogers a letter thanking him for his 30 years of service to Delta.

160)    On June 11, 2018, Mr. Rogers appealed his termination as being wrongful.

161)    On August 16, 2018, Delta denied Mr. Rogers his appeal and Delta upheld his termination.

### *Delta Treats Similarly Situated Employees Without a Disability More Favorably*

162)    In Fall 2018, Delta hired new employees into Aviation Maintenance Technician positions.

163)    Upon information and belief, the new Aviation Maintenance Technicians hired in Fall of 2018 did not have alcoholism as a disability.

164)     The newly hired Aviation Maintenance Technicians were hired to perform the same or similar essential job functions as Mr. Rogers.

165)     The newly hired Aviation Maintenance Technicians were not permitted by Delta to operate company vehicles or operating equipment for six months.

166)     Because employees hired by Delta to perform the same essential functions of Mr. Rogers' position were not permitted to drive for the first six months of their employment, driving clearly was not an essential function of the Aviation Maintenance Technician position.

167)     Because employees hired by Delta to perform the same essential functions of Mr. Rogers' position were not permitted to drive for the first six months of their employment, Delta could have accommodated Mr. Rogers' request to not drive and have Mr. Rogers' partner drive if ever the occasion arose.

168)     Delta treated these newly hired employees without alcoholism more favorably than Mr. Rogers by allowing them to work in the Aviation Maintenance Technician position and not drive.

### *Delta Treats Younger Similarly Situated Employees More Favorably*

169)     Delta has accommodated younger employees who worked in positions that involved driving who either suffer from alcoholism or who had restrictions placed on their driver's license due to alcohol or substance abuse by reassigning them to different positions due to those restrictions.

170)     Delta accommodated Tarek Challah ("Mr. Challah"), a younger Delta employee who had his driving privileges revoked due to a citation for Driving Under the Influence ("DUI").

171)   Mr. Challah is younger than Mr. Rogers.

172)   Mr. Challah is under the age of forty (40).

173)   As part of the accommodation Delta provided to Mr. Challah, he was reassigned to a different position working for Delta at DIA.

## VI.   CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

*Discrimination Based on Disability in Violation of the Americans with Disabilities Act Amended,*

*42 U.S.C. § 12112, et seq., as amended*

174)   Mr. Rogers incorporates by reference paragraphs 1 through 173 of this Complaint as though fully and separately stated herein.

175)   Mr. Rogers suffers from the following disability: alcoholism, which qualifies as a disability under the Americans with Disabilities Act Amended.

176)   Mr. Rogers' alcoholism affects his ability to perform major life functions, including, but not limited to, sleeping, eating, and general motor functions.

177)   Mr. Rogers was qualified for the position of an Aviation Maintenance Technician with Delta, with or without an accommodation.

178)   Delta hired Employees without alcoholism as a disability and treated them more favorably than Mr. Rogers.

179)   Delta terminated Mr. Rogers because of his alcoholism in violation of the Americans with Disabilities Act Amended.

180)   As a result of Delta's unlawful termination of Mr. Rogers due to his disability under the Americans with Disabilities Act Amended, Mr. Rogers has suffered and continues to suffer

damages, including, but not limited to, lost wages and benefits and compensatory damages, including emotional pain and suffering, and has incurred attorneys' fees and costs.

<u>SECOND CLAIM FOR RELIEF</u>

*Failure to Accommodate in Violation of the Americans with Disabilities Act Amended,*

*42 U.S.C. § 12112, et seq., as amended*

181)    Mr. Rogers incorporates by reference paragraphs 1 through 179 of this Complaint as though fully and separately stated herein.

182)    Mr. Rogers suffers from the following disability: alcoholism, which qualifies as a disability under the Americans with Disabilities Act Amended.

183)    Mr. Rogers' alcoholism affects his ability to perform major life functions, including, but not limited to, sleeping, eating, and general motor functions.

184)    Mr. Rogers was qualified for the position of an Aviation Maintenance Technician with Delta, with or without an accommodation.

185)    Mr. Rogers made two separate requests for a reasonable accommodation to accommodate his disability.

186)    Mr. Rogers requested a reasonable accommodation by way of being allowed to not drive as he performed the essential functions of his job.

187)    The accommodation to not drive was plausibly reasonable as Mr. Rogers rarely drove as part of his job and regularly walked to assignments, driving was never an essential function of his job nor was it necessary for him to perform the essential functions of his job, Mr. Rogers could have his partner drive anytime the occasion arose.

188)    The accommodation to not drive would not have caused Delta to incur any expense or inconvenience.

189)    Mr. Rogers also request a reasonable accommodation by way of being transferred to either a different position within Delta at DIA or a different airport where the occasion to drive never arose.

190)    The accommodation to transfer Mr. Rogers was plausibly reasonable as Delta had granted this same accommodation to other Delta employees in Mr. Rogers' same or similar position and with Mr. Rogers' same or similar disability, Mr. Rogers was qualified to perform other positions within Delta that Delta could have transferred Mr. Rogers into.

191)    Delta refused to engage in the interactive process with Mr. Rogers after he made both of his requests for a reasonable accommodation.

192)    Delta refused to accommodate Mr. Rogers' disability.

193)    Delta told Mr. Rogers that no accommodation was possible.

194)    Delta ignored Mr. Rogers' subsequent request for an accommodation.

195)    Instead of engaging in the interactive process and accommodating Mr. Rogers' disability, Delta suspended Mr. Rogers without pay.

196)    Instead of engaging in the interactive process and accommodating Mr. Rogers' disability, Delta terminated Mr. Rogers after almost 30 years with Delta.

197)    As a result of Delta's unlawful failure to accommodate Mr. Rogers' disability under the Americans with Disabilities Act Amended, Mr. Rogers has suffered and continues to suffer damages, including, but not limited to, lost wages and benefits and compensatory damages, including emotional pain and suffering, and has incurred attorneys' fees and costs.

<u>THIRD CLAIM FOR RELIEF</u>

*Retaliation for Requesting an Accommodation in Violation of the Americans with Disabilities Act*

*Amended, 42 U.S.C. § 12112, et seq., as amended*

198)    Mr. Rogers incorporates by reference paragraphs 1 through 196 of this Complaint as though fully and separately stated herein.

199)    Mr. Rogers suffers from the following disability: alcoholism, which qualifies as a disability under the Americans with Disabilities Act Amended.

200)    Mr. Rogers' alcoholism affects his ability to perform major life functions, including, but not limited to, sleeping, eating, and general motor function.

201)    Mr. Rogers was qualified for the position of an Aviation Maintenance Technician with Delta, with or without an accommodation.

202)    Based on the factual allegations stated, Delta's treatment of Mr. Rogers due to his request for a reasonable accommodation constitutes materially adverse employment actions.

203)    Delta's suspension of Mr. Rogers' without pay immediately after he requested a reasonable accommodation for his disability constitutes a materially adverse employment action.

204)    Delta's recommendation that Mr. Rogers be terminated for three days after Mr. Rogers requested a reasonable accommodation for his disability constitutes a materially adverse employment action.

205)    Delta's decision to end Mr. Rogers' employment with Delta the same day Mr. Rogers made his second request for a reasonable accommodation constitutes a materially adverse employment action.

206)   Delta's termination of Mr. Rogers constitutes a materially adverse employment action.

207)   Based on the facts and materially adverse employment action Delta took against Mr. Rogers, Delta participated in unlawful employment practices and policies in violation of the Americans with Disabilities Act by retaliating against Mr. Rogers for exercising his right to request a reasonable accommodation under the Americans with Disabilities Act and for complaining of discrimination.

208)   As a result of Delta's unlawful retaliation under the Americans with Disabilities Act, Mr. Rogers has suffered and continues to suffer damages, including, but not limited to, lost wages and benefits and compensatory damages, including emotional pain and suffering, and has incurred attorneys' fees and costs.

<u>FOURTH CLAIM FOR RELIEF</u>

*Discrimination based on Age in Violation of the Age Discrimination in Employment Act, 29*

*U.S.C. § 621-634.*

209)   Mr. Rogers incorporates by reference paragraphs 1 through 207 of this Complaint as though fully and separately stated herein.

210)   Mr. Rogers is 57 years old.

211)   Mr. Rogers was born on July 13, 1963.

212)   Mr. Rogers is part of a protected class under the Age Discrimination in Employment Act.

213)   Mr. Rogers was within the protected age range when Delta refused to accommodate him.

214)    Mr. Rogers was within the protected age range when Delta suspended Mr. Rogers without pay and terminated him.

215)    Mr. Rogers was performing satisfactory work as an Aviation Maintenance Technician at Delta.

216)    Delta subjected Mr. Rogers to adverse terms and conditions of employment when it refused to accommodate Mr. Rogers, when it suspended Mr. Rogers without pay, and when it terminated Mr. Rogers from employment with Delta.

217)    Mr. Rogers' performance was satisfactory when Delta refused to accommodate Mr. Rogers.

218)    Mr. Rogers' performance was satisfactory when Delta suspended Mr. Rogers without pay and terminated him.

219)    Employees similarly situated to Mr. Rogers but who were younger than him were not subjected to such adverse terms and conditions.

220)    Delta accommodated younger employees who were similarly situated to Mr. Rogers.

221)    Delta allowed younger employees who had also received a DUI to remain employed with Delta.

222)    Delta did not suspend without pay or terminate younger employees when they sought an accommodation as a result of a DUI.

223)    Delta did not apply the same terms and conditions of employment to younger, similarly situated employees until after Mr. Rogers raised discriminatory allegations with the CCRD.

224)     Delta unlawfully discriminated against Mr. Rogers due to his age in violation of the Age Discrimination in Employment when Delta subjected him to adverse terms and conditions of employment that were not applied to younger, similarly situated employees, including refusal to accommodate, suspension without pay, and termination.

225)     Delta's discriminatory treatment of Mr. Rogers was willful.

226)     As a result of Delta's unlawful age discrimination under the Age Discrimination in Employment Act, Mr. Rogers has suffered and continues to suffer damages, including, but not limited to, lost wages and benefits as well as liquidated damages, and has incurred attorneys' fees and costs.

<u>FIFTH CLAIM FOR RELIEF</u>

*Breach of Contract – Job Accommodations Program*

227)     Mr. Rogers incorporates by reference paragraphs 1 through 225 of this Complaint as though fully and separately stated herein.

228)     Delta maintains a Job Accommodation Program.

229)     Delta's Job Accommodation Program provides specific steps and resources in order to assist Delta employees with obtaining a reasonable accommodation when the need arises.

230)     Delta's Job Accommodation Program states that "Delta does not discriminate against individuals with disability and will offer reasonable accommodation to qualified individuals with a medically supported need."

231)     Mr. Rogers' alcoholism is a disability for which he sought a reasonable accommodation from Delta.

232)    By promulgating its Job Accommodation Program, Delta created an implied contract with Mr. Rogers that it would accommodate Mr. Rogers for his disability.

233)    By promulgating its Job Accommodation Program, Delta created an implied contract with Mr. Rogers that it would not discriminate against Mr. Rogers due to his disability.

234)    Delta breached its implied contract with Mr. Rogers when it failed apply its Job Accommodation Program to Mr. Rogers.

235)    Delta breached its implied contract with Mr. Rogers when it failed to accommodate Mr. Rogers when he sought a reasonable accommodation due to his disability.

236)    Delta breached its implied contract with Mr. Rogers when it discriminated against Mr. Rogers due to his disability.

237)    Mr. Rogers fulfilled his obligations to Delta under the Job Accommodations Program through his employment with Delta.

238)    As a direct and proximate result of Delta's breach, Mr. Rogers suffered and continues to suffer damages including, but not limited to, loss of salary wages, earnings and benefits, and other damages in an amount to be determined at trial.

<u>SIXTH CLAIM FOR RELIEF</u>

*Breach of Contract – EEO Policy*

239)    Mr. Rogers incorporates by reference paragraphs 1 through 238 of this Complaint as though fully and separately stated herein.

240)    Delta maintains an Equal Employment Opportunity Policy ("EEO Policy"), which includes anti-discrimination and anti-retaliation policies.

241)    Delta's EEO Policy states "Delta is a place of equal opportunity. The company prohibits discrimination based on …age…disability…or other characteristics that may be protected by law."

242)    Delta's promulgation of its EEO policy creates an implied contract that it will not discriminate or retaliate against Mr. Rogers due to his age or his disability.

243)    Delta breached its implied contract when it treated younger employees more favorably than Mr. Rogers.

244)    Delta breached its implied contract when it discriminated against Mr. Rogers due to his age and his disability.

245)    Mr. Rogers fulfilled his obligations to Delta under the EEO Policy.

246)    As a direct and proximate result of Delta's breach, Mr. Rogers suffered and continues to suffer damages including, but not limited to, loss of salary wages, earnings and benefits, and other damages in an amount to be determined at trial.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff Mr. Charles Scott Rogers respectfully requests that this Court enter judgment in his favor against Defendant Delta Air Lines, Inc. and order all economic and noneconomic damages including the following relief as allowed by law:

A.      Back pay and benefits;

B.      Reinstatement;

C.      Front pay and benefits in lieu of reinstatement;

D.      Compensatory damages, including but not limited to those for emotional distress, inconvenience, mental anguish, and loss of enjoyment of life;

    E.       Liquidated damages under the Age Discrimination in Employment Act;

    F.       Attorneys' fees and costs of this action (including expert witness fees), as permitted by law;

    G.       Pre-judgment and post-judgment interest at the highest lawful rate; and

    H.       Such further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all issues so triable to at least six (6) persons.

Respectfully submitted this 23rd day of November 2020.

Truhlar and Truhlar, LLP.

*s/ Christine E. Breen*
Christine E. Breen
Robert J. Truhlar
7340 E. Caley Ave., Suite 310
Centennial, CO 80111
Phone: 303.794.2404
Fax: 303.794.1142
Email: cbreen.truhlar@gmail.com
        roberttruhlar@att.net
*Attorneys for Plaintiff*

Plaintiff's Address:
P.O. Box 473395
Aurora, CO 80047